**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

**GEPPETTO CATERING COMPANY, INC.**
4505 Queensbury Road
Riverdale, MD 20737;

**CHARLES LENKIN**
18605 Bucklodge Road
Boyds, MD 20841;

    **Plaintiffs,**

    v.

**GEPPETTO OF MARYLAND, INC.**
c/o Abeideh Ansari-Djaberi
10257 Old Georgetown Road
Bethesda, MD 20814;

Serve: Abeideh Ansari-Djaberi
President
Geppetto of Maryland, Inc.
10257 Old Georgetown Road
Bethesda, MD 20814

**ABEIDEH ANSARI-DJABERI**
5225 Pooks Hill Rd. Unit 323
Bethesda, MD 20814

and

**SHAHIN M. RIAHI**
12108 Sunnyview Drive
Germantown, MD 20876

    **Defendants.**

Civil Case No.  _____.

**COMPLAINT**

Plaintiffs Geppetto Catering Company, Inc. and Charles Lenkin complain against Defendants as follows:

This is an action brought by Plaintiffs, Charles Lenkin and Geppetto Catering Company, Inc., against Defendants for breach of contract arising out of a certain service mark license agreement further described herein between Lenkin as Licensor and the Defendants as Licensee, and for trademark infringement under the United States Trademark Act, 15 U.S.C. §§ 1051, *et seq.* and Maryland common and statutory law.

### The Parties

1.     Plaintiff, Geppetto Catering Company, Inc. ("Geppetto Catering"), is a Maryland corporation, with a principal place of business at 4505 Queensbury Road, Riverdale, MD 20737.  It is a well-known, regional commercial catering company serving clients located primarily in Washington, DC, Maryland and Virginia.

2.     Plaintiff, Charles Lenkin ("Lenkin"), is an individual residing at 18605 Bucklodge Road, Boyds, MD 20841.   Lenkin is the founder and a former owner of Defendant, Geppetto of Maryland, Inc.  Lenkin also is the founder and majority shareholder of Geppetto Catering.

3.     Defendant, Geppetto of Maryland, Inc. ("Company"), is a Maryland corporation, with its principal place of business located at 10257 Old Georgetown Road, Bethesda, MD 20814.  The Company operates a full-service Italian restaurant named "Geppetto" ("Restaurant") serving high-quality, value-priced Italian food and Pizza primarily for on-premises consumption but also including carryout and delivery service.[1]

---

[1] The Company also owns and operates a full service New American style restaurant named Oakville Grille and Wine Bar which is located directly adjacent to the Restaurant.

4.      Defendant, Abeideh Ansari-Djaberi ("Djaberi") is an individual residing at 5225 Pooks Hill Road, Unit 323, Bethesda, MD 20814.  Upon information and belief, Djaberi owns a 50% interest in the Company and is the principal executive officer and director of the Company as well as the principal operator and manager of the Restaurant.

5.      Defendant, Shahin M. Riahi ("Riahi"), is an individual residing at 12108 Sunnyview Drive, Germantown, MD 20876.  Upon information and belief, Riahi owns the remaining 50% interest in the Company and serves as a director, officer and manager of the Restaurant.

**Jurisdiction and Venue**

6.      This Court has federal question jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 over the United States Trademark Act claims.

7.      This Court has supplemental jurisdiction over the claims arising under the laws of the State of Maryland under 28 U.S.C. § 1367(a) because these claims form part of the same case or controversy and all claims arise from a common nucleus of operative facts.

8.      This Court has general personal jurisdiction over the Company because it is an entity formed under the laws of Maryland and is located within this judicial district.

9.      This Court has general personal jurisdiction over Defendants Riahi and Djaberi because they are "essentially at home" in this judicial district, being the owners and operating managers of the Company.  Moreover, the harm suffered by the Plaintiffs in this district flows directly from Defendants Riahi and Djaberi's unlawful conduct, individually and through the Company, in this judicial district.

10.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part, if not all, of the events or omissions that give rise to this Complaint occurred in this judicial district.

## HISTORY OF THE RESTAURANT, GEPPETTO CATERING AND THE MARK

### I.      Geppetto Restaurant; Creation and Use of the Service Mark

11.      In or about 1977, Lenkin purchased all of the issued and outstanding stock of a District of Columbia corporation named Number One Son Inc.[2]  At that time Number One Son Inc. was operating a Chinese restaurant, centrally located in the retail shopping district of Washington, DC known as Georgetown.  Lenkin remodeled the restaurant space and changed it into a full-service Italian restaurant named "Geppetto" ("Restaurant").[3]  The Restaurant served high quality, value-priced Italian fare, including pizza, and also offered carryout and delivery service.

12.      Lenkin personally designed a distinctive service mark for the Restaurant which included the mark "GEPPETTO" together with a design depicting a marionette seated above the name as if sitting on a swing, as shown below.

---

[2] Number One Son Inc. is no longer in existence.
[3] Lenkin named the Restaurant after the storybook character, Geppetto, one of the main characters in "Pinocchio", his daughter's favorite bedtime story.



13.     Over the years, the Restaurant became very successful and well-known both in the Washington, DC metropolitan area and in surrounding areas in Maryland and Virginia, and also enjoyed a degree of national recognition, especially for its distinctive pizza.  Various national newspapers, magazines and trade periodicals published articles touting the Restaurant and especially its pizza, giving it consistently high ratings, including <u>Gourmet Magazine</u>, <u>The Atlanta Journal</u> newspaper, <u>People</u> magazine, <u>The New York Times</u>, <u>The Washington Dossier</u> magazine, <u>Washington Calendar</u> magazine, <u>Bon Appetit</u> magazine, <u>Washingtonian</u> magazine and <u>The Washington Post</u>, to name a few.

14.     Lenkin registered the GEPPETTO service mark with the United States Patent and Trademark Office ("<u>USPTO</u>") on June 4, 1985 under registration number 1,339,769 ("<u>Mark</u>").   Exhibit A is a true and correct copy of the original registration certificate for the Mark, together with subsequent renewal certificates.

15.     Later that year, Lenkin decided to change the format for the Restaurant's Georgetown location from an Italian style restaurant to a New American style restaurant featuring a large variety of California wines.  The new restaurant was named Mendocino

Grille and Wine Bar.  At the same time, Lenkin moved the Geppetto Restaurant's operations to its current location in Bethesda, Maryland.  Lenkin formed the Company on January 21, 1986 to own and operate the Restaurant at its Maryland location.[4]

16.     From its inception and continuing for a period of twenty years, Lenkin owned 98% of the Company's issued and outstanding stock.[5]  During that time the Restaurant continued to thrive and gain glowing recognition and popularity, not only in Washington, DC where it originated, but also in the surrounding urban and suburban areas of Maryland and Virginia.

**II.     Catering Company**

17.     In or about 1989, Lenkin decided to start a commercial catering business. On September 21, 1989, Lenkin formed Geppetto Catering and began its operations at the Restaurant's Bethesda location.  Shortly thereafter, he moved the catering business to a location in Washington, DC where it operated for a couple of years.  In or about 1995, Lenkin moved the catering company once again, to its present location in Riverdale, Maryland.  Lenkin is and has been since its inception the majority shareholder of the Catering Company.

18.     The Catering Company has grown and developed over the years into one of the region's premier commercial caterers.  It provides drop-off catering, full-service catering and event-planning to businesses in the greater Washington, DC area and is

---

[4] In or about 2005, Lenkin closed the Mendocino Grille and Wine Bar location in Washington, DC; moved it to the Bethesda, adjacent to the currently existing Geppetto Restaurant; and changed the name to Oakville Grill and Wine Bar.  As noted above at Note 1, the Geppetto Restaurant and Oakville Grille and Wine Bar both are operated by the Company at the Bethesda location.

[5] Lenkin's sister and a colleague owned the remaining 2% of the Company's issued and outstanding stock.

known as "Washington's Choice" for corporate catering.  Its website is located at
www.geppettocatering.com.

19.     Geppetto Catering maintains preferred booking relationships with many
well-recognized and established Washington, DC organizations, venues and institutions,
including the National Building Museum, the Warner Theater, the US Navy Memorial
Naval Heritage Center, the Carnegie Institution of Washington, the Franklin Square
Banquet and Conference Center, and Carr Workplaces at The Willard. Geppetto Catering
also is a top "green" caterer in the Washington DC region, providing its clients with
biodegradable and sustainable serviceware and organic and locally sourced foods and is
three-star certified by the Green Restaurant Association.

20.     Geppetto Catering also is known in the region for its philanthropic
contributions to the community.  The <u>Washington Business Journal</u> has honored Geppetto
Catering for more than six years for its involvement in the local community.

21.     Geppetto Catering has expended over $2 million in total marketing
expenses in advertising and promoting its goods and services.

**III.    <u>Sale of the Company's Stock to Defendants, Djaberi and Riahi</u>**

22.     On November 16, 2006, Defendants, Djaberi and Riahi, acquired 48% of
the Company's issued and outstanding stock and took over the operation and management
of the Restaurant. Following the sale, Lenkin continued to hold a controlling 52% interest
in the Company.

23.     Lenkin sold his remaining 52% of the Company's issued and outstanding
stock to Djaberi and Riahi on June 2, 2014.

24.     Upon information and belief, Djaberi and Riahi are currently the sole owners and operators of the Company and the Restaurant.

**IV.     <u>Service Mark License Agreement</u>**

25.     As part of the 2014 stock sale transaction, Lenkin as Licensor and the Defendants as Licensee entered into a Service Mark License Agreement dated June 2, 2014 ("<u>Agreement</u>").  A copy of the Agreement is attached as Exhibit B.

26.     The Agreement granted to the Defendants a non-exclusive license to use GEPPETTO and the federally registered service mark during the term of the License subject to various restrictions enumerated in <u>Section 1</u> of the Agreement (collectively the "Mark").   The restrictions were designed to ensure that Lenkin retained the sole and exclusive ability to use and protect the Mark and associated goodwill in connection with the operation of the Catering Company and to protect against confusion by the general public between the goods and services provided by the Restaurant, which Lenkin no longer owns or controls, and the goods and services provided by the Catering Company, which Lenkin continues to own and control.

27.     Specifically, <u>Section 1</u> of the Agreement allows Defendants to use the Mark solely for purposes of (i) the Company's exterior and interior signage at the Restaurant location only; (ii) the Company's menus, business cards, stationery and printed direct mail advertising or promotion of the Restaurant's food and beverage services at or from the Restaurant location only; (iii) the sale of prepared food and beverages for off-premises consumption but only from the Restaurant's location and only in regard to items listed on the Restaurant's then existing menu (which is attached to the Agreement as an exhibit) or the sale of similar Italian style food from the Restaurant's

location only; and (iv) on the Company's website at www.geppettorestaurant.com but only as shown on the website as it existed on the date of the Agreement ("Original Website").  A copy of the entire content of the Original Website is attached to the Agreement as an exhibit.

28.     Section 1 of the Agreement contains various restrictions and prohibitions in regard to Defendant's use of the Mark and in regard to the content of the Original Website.  Specifically, Section 1 of the Agreement prohibits the Defendants, in substance, from doing any of the following:

a.      Making any changes to the Original Website without Lenkin's prior written consent, not to be unreasonably withheld, conditioned or delayed.

b.      Using the Mark in connection with any catering services whatsoever (whether from the Restaurant location or otherwise).

c.      Displaying the Mark on any signage whatsoever except at the Restaurant's Bethesda location.

d.      Displaying the Mark anywhere on the Internet except as shown in the content of the Original Website; and specifically prohibiting Defendant's use of the Mark on Facebook, any other Internet social media, or via any other electronic media.

e.      Making any changes to the Restaurant's menu as displayed on the Original Website with the exception of changes that do not substantially deviate from the Italian style food contained in such menu.

29.     Section 1 of the Agreement also contains Defendants' covenant that they will not permit nor authorize any other individual or entity of any kind to use the Mark in any manner or for any purpose whatsoever.

30.     Section 10 of the Agreement gives Lenkin the right to terminate the Agreement and revoke the license in the event that Defendants fail to cure any breach of the Agreement within ten days following notification of the breach.

31.     Section 11 of the Agreement provides that upon expiration or earlier termination of the Agreement, Defendants shall immediately discontinue all use not only of the registered Mark but also the use of any "trade name, service name, symbol, logo or designation confusingly similar thereto." Section 11 further contains Defendants' acknowledgment that Defendants' failure to immediately cease use of the Mark and/or any remotely confusingly similar mark upon expiration or earlier termination of the Agreement will result in immediate and irreparable damage to Lenkin for which there is no adequate remedy at law, thereby entitling Lenkin to temporary restraining orders and preliminary and permanent injunctions against such use.

32.     Section 12 of the Agreement contains a liquidated damages provision in addition to all of Lenkin's other and further rights and remedies, in the amount of One Hundred Dollars ($100.00) per day for each day during which Defendants' breach or default under the Agreement is continuing.

## DEFENDANTS' BREACH OF THE AGREEMENT

33.     In or about March and April 2015, Lenkin discovered that Defendants were in flagrant breach of virtually every restriction contained in the Agreement, as further described below.

34.     Defendants completely redesigned the Original Website without informing Lenkin or requesting his consent.  Specifically, (i) all of the photography and formatting of the Original Website had been changed; (ii) a page entitled "Geppetto Catering Menu" was added; (iii) the Catering page displayed on the site contained and continues to

contain a menu entitled "Geppetto Catering" and offers the sale of food for off-premises consumption which is not in keeping with nor similar to the Italian style prepared food described in the menu attached to the Agreement.  Such prohibited food items include the following:  shrimp cocktail; duck spring roll; veggie dumplings; potato cheddar soup; Reuben sandwich; New England and Manhattan clam chowder; crab tower; Santa Fe salad; stuffed pepper; surf & turf; Greek salad; blackened flat iron steak with blue cheese, onion strings and haricot vert; beef stroganoff; grilled tenderloin; mango chicken with mango curry sauce; rice pilaf; and Basmati rice with saffron.   Accordingly, the re-designed website breached the Agreement in three respects:  (1) the Original Website had been changed without Lenkin's knowledge nor prior written consent; (2) the redesigned website offered prepared food for off-premises consumption that is not described in nor in keeping with the Italian style food listed in the menu attached to the Agreement; and (3) the redesigned website used the Mark in connection with catering services.  Copies of pertinent pages of the redesigned website are attached as Exhibit C.

35.     In addition to using the Mark in connection with catering services on the redesigned website, Defendants themselves were using the Mark in connection with catering services as well as allowing, and/or contracting with third parties to use the Mark in connection with catering services and for other purposes, as follows:

a.     Defendants printed and distributed business cards as shown below (front and back) which contain the Mark on the front; and the back of the card contains the words, "Geppetto Catering, Inc."[6]

---

[6] To Lenkin's knowledge after due investigation "Geppetto Catering, Inc." as shown on Defendants' business card is a fictitious name in that it is not an existing corporation, but it is confusingly similar to the name of the Plaintiff corporation, Geppetto Catering *Company*, Inc. [Italics added]





b.      Defendants printed and distributed carryout menus containing the statement, "Call us today for you[r] office luncheon! – Ask us about additional services for your next event."  Copies of pertinent pages of the menu are attached as Exhibit D.

c.      Defendants subscribed, contracted for and/or permitted third party Internet hosts to display the Mark in connection with advertising the Restaurant's services in general, providing online ordering services, and offering catering services, thus breaching the Agreement's prohibitions against (i) allowing third parties to use the Mark for any purpose whatsoever; (ii) displaying the Mark on the Internet other than on the Original Website; and (iii) using the Mark in connection with catering services.  Exhibit E contains copies of relevant pages of such third-party Internet sites.

d.      Defendants displayed the Mark (both with and without the design element) on the Restaurant's Facebook account and Twitter Account and offered catering

services on both accounts (see February 20th entry on both sites, stating "Can't pull yourself away from Netflix?  That's okay—we can still hang out!  We offer delivery, take-out, and catering for nights in"). Exhibit F contains the relevant pages of such accounts, constituting breach of the Agreement's prohibitions against (i) displaying the Mark on any Internet site other than the Original Website and (ii) using the Mark in connection with catering services.

> e.      Upon information and belief, Defendants allowed their third-party web design contractor to display the Mark and advertise the Restaurant's services on the contractor's own Internet website, thus breaching the Agreement's prohibition against allowing third parties to use the Mark for any purpose whatsoever.  Exhibit G contains a copy of relevant pages of such web designer's website.

36.      Defendants purchased at least one delivery truck, which, upon information and belief, is being used for catering services.  The delivery truck is painted with the Mark, thus breaching the Agreement's prohibitions against (i) displaying the Mark on any signage other than exterior and interior signage at the Restaurant's location only and (ii) using the Mark in connection with catering services.  Exhibit H contains a picture of such delivery truck.

37.      As Defendants, Djaberi and Riahi, had known Lenkin since the 2006 stock purchase transaction and were in touch with him on a regular basis in connection with operation of the Restaurant, they were well aware of the Catering Company, its successes and good reputation, as well as Lenkin's ownership interest in it.  Thus the Defendants' use of the mark "GEPPETTO CATERING" for purposes of advertising and promoting the Restaurant's catering business in violation of the Agreement was and continues to be

a willful unlawful act, aimed at profiting from the goodwill in the Mark developed by the Catering Company.

38.     Defendants were notified of their breaches of the Agreement by letter dated April 8, 2015, a copy of which is attached as Exhibit I.

39.     Defendants failed to cure such breaches within the 10-day cure period set forth in the Agreement.  Accordingly pursuant to Section 11 of the Agreement, Lenkin elected to terminate the Agreement by notice to Defendants dated April 21, 2015.  A copy of the termination notice is attached as Exhibit J.

40.     The termination letter demanded that the Defendants immediately undertake the following pursuant to Section 11 of the Agreement:

a.     Cease and discontinue all use of the Mark;

b.     Cause all third parties with whom the Defendants contracted, permitted or requested to use the Mark on the Internet or otherwise to immediately cease and discontinue use of the Mark on the Internet for any purpose whatsoever;

c.     Cease and discontinue all use, in any manner whatsoever, of any trade name, service name, symbol, logo or designation confusingly similar to the Mark, including without limitation, "GEPPETTO", "GEPPETTO RESTAURANT", and/or "GEPPETTO CATERING" and immediately remove the same from all of the following:

i.     The exterior and interior signage of the Defendants' business location, menus, displayed, employee apparel, business cards, stationary, brochures, and advertising, among other things;

ii.     The Defendants' website at www.geppettorestaurant.com;

iii.      All other Internet sites and electronic and/or telephonic media owned, used, held or controlled, directly or indirectly, or contracted for or permitted by the Defendants, including but not limited to any Facebook accounts, Twitter accounts, and/or other Internet websites and accounts.

41.    Defendants have failed to comply with the terms of the Agreement and the demands contained in said termination notice and continue to be in flagrant breach of the restrictions contained in the Agreement as described herein.

42.    Prior to filing this Complaint, Plaintiffs made a good faith effort to avoid litigation as described above, by issuing notice of breach and a termination notice in accordance with the Agreement.  Counsel for the Defendants has responded, acknowledging receipt of such notices.

## COUNT I: BREACH OF CONTRACT

43.    Plaintiffs incorporate by reference all of the foregoing paragraphs as if set forth herein in full.

44.    Plaintiff Lenkin and the Defendants agreed to the terms and conditions of the Agreement.

45.    Plaintiff Lenkin has fulfilled all of his obligations under the Agreement.

46.    Defendants breached the Agreement and continue to be in breach.

47.    Plaintiff Lenkin has suffered actual damages in an amount to be proven at trial, as well as consequential damages and immediate and irreparable harm as a direct and proximate result of the Defendants' breach of the Agreement.

## COUNT II: FEDERAL TRADEMARK INFRINGEMENT

48.     Plaintiffs incorporate by reference all of the foregoing paragraphs as if set forth herein in full.

49.     Exhibit K is a true and correct copy of an online report published by the USPTO regarding the current status of the Mark.  Lenkin is the sole owner of the Mark. The federal trademark registration of the Mark is valid and subsisting, provides conclusive evidence of Lenkin's right to use the Mark in commerce; and establishes that Lenkin has senior rights in the Mark such that there is no question of priority of rights therein.

50.     Defendants' unauthorized use of the Mark as aforesaid constitutes the use in commerce of a reproduction, copy, or colorable imitation of Plaintiff Lenkin's Mark in connection with the sale, offering for sale, and advertisement of Defendants' goods and services, which use is likely to cause confusion, to cause mistake, or to deceive as to the source or origin of Defendants' goods and services, in violation of 15 U.S.C. § 1114(1).

51.     Defendants' unauthorized use of the Mark as aforesaid has caused and continues to cause irreparable harm to Plaintiff Lenkin.

52.     Unless restrained and enjoined by this Court, Defendants will persist in their infringement of Plaintiff Lenkin's federally-registered Mark, thereby causing Plaintiff Lenkin further irreparable harm.

53.     Plaintiff Lenkin has no adequate remedy at law.

54.     Defendants have derived unlawful profits from their infringement of the Mark, and have caused damage to Plaintiff Lenkin.

55.     Defendants' brazen and malicious actions make this an exceptional case of intentional infringement, entitling Plaintiff Lenkin to trebling of his actual damages and the Defendants' profits, plus costs and reasonable attorney's fees in bringing and maintaining this action.

56.     Plaintiffs are entitled, under 15 U.S.C. § 1117, to recover any and all profits of Defendants that are attributable to the acts of infringement and unfair competition, as well as actual damages or statutory damages sustained by virtue of the Defendants' acts of infringement and unfair competition.

57.     The amount of money due from the Defendants to the Plaintiffs is not entirely known to the Plaintiffs and cannot be fully ascertained without a detailed accounting by the Defendants of the precise revenues received under the Defendants' unlawful use of the Mark.

## COUNT III: COMMON LAW UNFAIR COMPETITION – TRADEMARK INFRINGEMENT

58.     Plaintiffs incorporate by reference all of the foregoing paragraphs as if set forth herein in full.

59.     As set forth above, Plaintiffs have used the Mark in the State of Maryland in connection with restaurant and catering services..

60.     As a result of the long use by Plaintiffs of the Mark, and the quality of the goods and services offered under the Mark, the Mark has become widely known within the State of Maryland, and has acquired a reputation for excellent quality.

61.     Defendants have traded off and misappropriated the reputation and valuable goodwill of the Mark in the State of Maryland and acted in a manner that has

created and will continue to create a likelihood of confusion and mistake as to the source

of the Defendants' products and services.  The Defendants' acts are likely to lead the

public to believe mistakenly that the Defendants' products and services are in some way

associated with, or sponsored by the Plaintiffs, to the detriment of the Plaintiffs.

62.     Unless enjoined by this Court, the Defendants will continue their conduct

of engaging in acts of infringement and unfair competition, to the irreparable damage and

injury of the Plaintiffs.

63.     Defendants have derived unlawful gains and profits from their unlawful

acts and have caused loss, injury, and damage to the Plaintiffs and the reputation and

goodwill associated with the Mark, in an amount as yet unknown but to be proven at trial.

## COUNT IV: FEDERAL UNFAIR COMPETITION

64.     Plaintiffs incorporate by reference all of the foregoing paragraphs as if set

forth herein in full.

65.     Defendants' unauthorized use of the Mark in connection with Defendants'

goods and services constitutes the use in commerce of a word, term, name, symbol, or

device, which use is likely to cause confusion, or to cause mistake, or to deceive, as to the

affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin,

sponsorship, or approval of Defendants' goods and services or Defendants' commercial

activities by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1).

66.     Defendants' unauthorized use of the Mark as aforesaid has caused and

continues to cause irreparable harm to Plaintiffs.

67.     Unless restrained and enjoined by this Court, Defendants will persist in

their infringement of Plaintiffs Mark, thereby causing Plaintiffs further irreparable harm.

68.     Plaintiffs have no adequate remedy at law.

69.     Defendants have derived unlawful profits from their infringement of the Mark, and have caused damage to Plaintiffs.

70.     Defendants' brazen and malicious actions make this an exception case of intentional infringement, entitling the Plaintiffs to trebling of their actual damages and the Defendants' profits, plus costs and reasonable attorney's fees in bringing and maintaining this action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that this Court:

1.     Grant a Preliminary and Permanent Injunction:

a.     Enjoining the Defendants, their officers, agents, contractors, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert with the Defendants from:

i.     imitating, copying, or making any other infringing or potentially infringing use of the Mark, including without limitation "GEPPETTO", alone or in combination with any other word(s), term(s), designation(s), mark(s), and/or design(s), as well as all similar marks or domain names.

ii.     manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the Mark, including without limitation "GEPPETTO", and any mark confusingly similar thereto;

iii.      using any false designation of origin or false description or statement which can or is likely to lead anyone to believe that any of Defendants' goods or service has any connection whatsoever to the Plaintiffs;

iv.      using the names, logos, or other variations thereof of the Mark, including without limitation "GEPPETTO", in any of the Defendants' marks, trade names or corporate names, menus, marketing materials, signage, websites and any other Internet sites and media owned or controlled directly or indirectly by Defendants;

v.      engaging in any other activity constituting an infringement of the Mark, including without limitation "GEPPETTO", and of the rights of the Plaintiffs' in, or right to use or to exploit, the Mark, including without limitation "GEPPETTO"; and

vi.      assisting, aiding, abetting, requesting, subscribing or contracting for any other person or business entity to engage in or perform any of the activities referred to in subparagraphs (i) through (iv) above;

b.      Ordering the Defendants to destroy all menus, business cards, literature, signage, hard-copy and Internet advertising, promotional materials, online social media, and any other items and Internet media that use the Mark, including without limitation "GEPPETTO";

c.      Order the Defendants to publish notice to all actual or potential customers who may have seen the Defendants' use of the Mark, including without limitation "GEPPETTO", which notice shall disclaim any connection with the Plaintiffs and shall advise them of the Court's injunction order and of the Defendants' discontinuance from all use of the Mark, including without limitation "GEPPETTO";

d.      Order the Defendants to pay the costs of corrective advertising;

e.      Order the Defendants to hold in trust, as constructive trustees for the benefit of the Plaintiffs, Defendants' profits obtained from their provision of the Defendants' catering products and services offered for sale under the Mark;

f.      Order the Defendants to provide to the Plaintiffs a full and complete accounting of all amounts due and owing to the Plaintiffs as a result of the Defendants' unlawful activities; and

g.      Order the Defendants to file with the Court and serve on the Plaintiffs, within thirty days of the entry of an injunction, a report in writing under oath setting forth in detail the manner in which the Defendants have complied with the Court's injunction;

2.      Enter a judgment against the Defendants that the Defendants have willfully infringed the Plaintiff Lenkin's registered trademark rights in the Mark under 15 U.S.C. § 1114;

3.      Enter a judgment against the Defendants that the Defendants have committed and are committing acts of false designation of origin, false or misleading description of fact, or false or misleading representation in violation of the Plaintiffs' rights under 15 U.S.C. § 1125(a);

4.      Enter a judgment against the Defendants that the Defendants have engaged in unfair competition in violation of the Maryland statutory and common law.

5.      Order the Defendants to pay the general, special, actual, and statutory damages of the Plaintiffs as follows:

6.     That the Defendants be required, in accordance with 15 U.S.C. § 1117(a), to pay to the Plaintiffs three times such damages as the Plaintiffs have suffered as a result of the Defendants' acts of infringement and unfair competition, and three times all profits derived by the Defendants since their infringement began;

7.     That the Defendants pay to the Plaintiffs damages (in the amount of approximately $1,000,000.00) and Defendants' profits under the Maryland statutory and common law;

8.     That the Defendants pay to the Plaintiffs liquidated damages as required under the Agreement;

9.     That the Defendants pay to the Plaintiffs both the costs of this action and the reasonable attorneys' fees incurred by the Plaintiffs in bringing and prosecuting this action under 15 U.S.C. § 1117(a);

10.    Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Kimberly Jandrain

Jonathan Greenbaum
Bar No. 24144
Kimberly Jandrain
Bar No. 17391
Lloyd Liu
Bar No. 18500
COBURN & GREENBAUM PLLC
1710 Rhode Island Ave.
Second Floor
Washington, DC 22203

*Counsel for the Plaintiffs*